# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

CAI-YEN FIRESTONE,

      Plaintiff,

   v.

FEDERAL RETIREMENT THRIFT
INVESTMENT BOARD, *et al.*,

      Defendants.

</td><td>

Civil Action No. 16-1810 (CKK)

</td></tr>
</table>

## MEMORANDUM OPINION
(March 25, 2019)

Plaintiff Cai-Yen Firestone alleges that she is the designated beneficiary of a Thrift Savings Plan ("TSP") account containing retirements benefits accrued by her now-deceased brother, Bernard Hsieh. But because Mrs. Firestone cannot show that Mr. Hsieh effectively designated her prior to his death, she is unable to prevail. Mr. Hsieh's surviving spouse, Defendant Melissa Wang, shall receive the proceeds of his TSP account pursuant to the statutory order of precedence.[1]

Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court **GRANTS** Mrs. Wang's [29] Motion to Dismiss or, in the Alternative, for

---

[1] As the record reflects that both Plaintiff Firestone and Defendant Wang are, at least as of Mr. Hsieh's death, married, the Court refers to each by the married honorific.

[2] The Court's consideration has focused on the following documents:

- Def. Wang's Mem. of P&A in Supp. of Mot. to Dismiss or, in the Alternative, for Summ. J., ECF No. 29-1 ("Wang's Mem."); Pl.'s Opp'n to Def. Melissa Wang's Mot. to Dismiss or in the Alternative Mot. for Summ. J., ECF No. 31 ("Pl.'s Opp'n to Wang's Mot."); Def. Wang's Reply to Pl.'s Opp'n to Def. Wang's Mot. to Dismiss/for Summ. J., ECF No. 32 ("Wang's Reply"); and

- Mem. in Supp. of Mot. to Dismiss or, Alternatively, for Summ. J., ECF No. 30 ("FRTIB's Mem."); Pl.'s Opp'n to Defs. FRTIB's and TSP's Mot. to Dismiss or, in the Alternative, Mot. for Summ. J., ECF No. 33 ("Pl.'s Opp'n to FRTIB's Mem."); and Federal Thrift [sic] Investment Board's and Thrift Savings Plan's Reply in Supp. of Their Mot. to Dismiss, or, in the Alternative, for Summ. J., ECF No. 34 ("FRTIB's Reply").

Summary Judgment, and **GRANTS** Defendants Federal Retirement Thrift Investment Board's

("FRTIB") and TSP's[3] [30] Motion to Dismiss, or, in the Alternative, for Summary Judgment.

## I. BACKGROUND

To summarize the few relevant factual allegations, the Court shall rely on the [17] Amended

Complaint, as supplemented by the record where the Court indicates.

While he was battling cancer, Bernard Hsieh prepared and submitted a Form TSP-3 to

FRTIB and TSP that purported to designate one of his sisters, Mrs. Firestone, as the 100%

beneficiary of his TSP account numbered 6801147154539. Am. Compl., ECF No. 17 ("Am.

Compl."), ¶¶ 7, 8 10, 11. Mrs. Firestone alleges that the form was "properly signed and dated" on

November 5, 2015, by not only Mr. Hsieh but also his two witnesses. *Id.* ¶ 10. A copy of the

operative portion of Mr. Hsieh's Form TSP-3 is in the record and, with one exception, it

undisputedly supports her contention. Pl.'s Opp'n to FRTIB's Mot., Ex. 5, ECF No. 33-5 ("Hsieh

TSP-3").[4] Although the parties dispute the significance of that exception, they do not dispute that

Carolan Bontje, one of Mr. Hsieh's two witnesses, did not add a date to the blocks above the

language, "Date Signed (*mm/dd/yyyy*)," next to her signature on the first page of his Form TSP-3.

*Id.*; *see also, e.g.*, [FRTIB's] Stmt. of Material Facts as to Which There Is No Genuine Dispute,

---

[3] It is not clear that TSP is itself an entity subject to suit. *See* FRTIB's Mem. at 2 (describing relationship of FRTIB and TSP); *Hewitt v. Thrift Saving* [sic] *Plan*, 664 F. Supp. 2d 529, 530 (D.S.C. 2009) (finding that FRTIB was "misidentified" by plaintiff as TSP). But because the parties do not expressly raise this issue, the Court shall not dwell on it. The Court shall continue to refer to both FRTIB and TSP as defendants.

[4] Mr. Hsieh's Form TSP-3 may have contained one or more additional pages, including instructions, but the Court need not decide that issue, about which there may be some dispute. The Court also notes that the two witnesses' printed names on the first page of this copy of Mr. Hsieh's form appear to be partially blotted out, perhaps for confidentiality. *See* Pl.'s Opp'n to FRTIB's Mot., Ex. 4, ECF No. 33-4 (Aff. of Carolan Bontje ¶ 12). In any case, after Mrs. Firestone filed her opposition brief, FRTIB and TSP submitted a version of this form that included those printed names in full. FRTIB's Reply, Ex. 1, ECF No. 34.

ECF No. 30, ¶ 3 (asserting that government received Mr. Hsieh's Form TSP-3 that lacked date of one witness's signature); [Wang's] Undisputed Stmt. of Material Facts, ECF No. 29-1, ¶ 22 (same); Pl.'s Opp'n to FRTIB's Mot., Ex. 4, ECF No. 33-4 (Aff. of Carolan Bontje ¶ 11 ("I am fairly certain that I did not include the numerical date in these blocks on the first page because . . . .")); Pl.'s Opp'n to Wang's Mot., Ex. 4, ECF No. 31-5 (Aff. of Carolan Bontje ¶ 11 (same)). Upon Mr. Hsieh's death, Mrs. Firestone allegedly asked FRTIB and TSP about her rights to his account and was told that she is not a beneficiary. Am. Compl. ¶ 13.

Mrs. Firestone filed this suit on September 9, 2016, against FRTIB and TSP. Compl., ECF No. 1. The Court granted FRTIB's and TSP's motion under Federal Rule of Civil Procedure 19(a) to join Mr. Hsieh's surviving spouse, Mrs. Wang. Mem. Op. and Order, ECF No. 16. The Court agreed that Mrs. Wang is a necessary party because, in short, she would be entitled to Mr. Hsieh's TSP funds if his designation of Mrs. Firestone were found invalid. *See id.* at 2. FRTIB and TSP have evidently agreed not to make a distribution from that account until this litigation concludes. Am. Compl. ¶ 13.

In an Amended Complaint adding Mrs. Wang as a defendant, Mrs. Firestone pleads four claims against some combination of the three defendants. Am. Compl. In Count I, she seeks a Declaratory Judgment vis-à-vis all three defendants that she is the beneficiary of Mr. Hsieh's TSP account No. 6801147154539 and any other account where associated funds may currently be held. Count II alleges that FRTIB and TSP have breached a putative contract they had with Mr. Hsieh and of which Mrs. Firestone is allegedly a third-party beneficiary. In Count III, Mrs. Firestone requests specific performance of FRTIB's and TSP's alleged obligation to make a distribution to her from the subject TSP account. And Count IV asserts equitable estoppel to prevent FRTIB and

TSP from withholding those TSP assets from Mrs. Firestone and distributing them to anyone else, and to prevent Mrs. Wang from attempting to claim those assets.

At Mrs. Firestone's and Mrs. Wang's request in June 2017, the Court postponed the deadline for Mrs. Wang's response to the Amended Complaint to permit those parties to engage in mediation. Order, ECF No. 26. When mediation did not succeed, Mrs. Wang filed her motion to dismiss, or in the alternative, for summary judgment. FRTIB and TSP followed shortly thereafter with their own such motion. Briefing having concluded, both motions are now ripe for resolution.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A court must dismiss a case pursuant to Federal Rule 12(b)(1) when it lacks subject-matter jurisdiction. In determining whether there is jurisdiction, "the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)) (internal quotation marks omitted). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, still that "[p]laintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s]

factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

## B. Federal Rule of Civil Procedure 56

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of *some* factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; a "genuine" dispute requires sufficient admissible evidence to support a jury verdict for the non-movant. *Id.*

A party attempting to place a fact beyond dispute, or to show that it is truly disputed, must (a) rely on specific parts of the record, such as documentary evidence or sworn statements, or (b) "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court has the discretion to "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not assess credibility or weigh evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with "all justifiable inferences . . . drawn in his favor." *Anderson*, 477 U.S. at 255. "If material facts are at issue, or though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (quoting *Kuo-Yun Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994)) (internal quotation marks omitted). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

## III. DISCUSSION

Because Mrs. Firestone has not established subject-matter jurisdiction, all four of her claims must be dismissed under Rule 12(b)(1). The Court need not reach Rule 12(b)(6) grounds for dismissal. In the alternative, Defendants are entitled to summary judgment as to all four of Mrs. Firestone's claims.

### A. Dismissal for Lack of Subject-Matter Jurisdiction Under Rule 12(b)(1)

Mrs. Firestone alleges that this Court has subject-matter jurisdiction over a federal question pursuant to 5 U.S.C. § 8477(e)(7)(A). *See* Am. Compl. ¶ 5; 28 U.S.C. § 1331. Her additional assertion now of jurisdiction under the Declaratory Judgment Act is unavailing; settled precedent recognizes that this statute does not independently confer jurisdiction. *See* Pl.'s Opp'n to Wang's

Mot. at 9-10 (citing 28 U.S.C. § 2201(a)); Pl.'s Opp'n to FRTIB's Mot. at 4-5 (same); FRTIB's Reply at 5 (citing *C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002)); 10B Charles Alan Wright et al., *Federal Practice and Procedure Civil* § 2766 (4th ed.). Because Mrs. Firestone has not pled diversity jurisdiction or supplemental jurisdiction in the alternative, the Court finds that she has waived those grounds for jurisdiction over any claims in her Amended Complaint for which jurisdiction by federal question is unavailing.

Mrs. Firestone's federal question arises under the Federal Employees' Retirement System Act of 1986 ("FERSA"), as amended, 5 U.S.C. § 8401, *et seq.*, which governs Mr. Hsieh's TSP. "A TSP is a retirement savings plan for federal employees, and it operates much like the Section 401(k) savings plans which are offered to employees by private sector employers." *Kriebel v. Long*, 994 F. Supp. 2d 674, 675 (E.D. Pa. 2014). Section 8477(e) furnishes exclusive jurisdiction over the FERSA claims in this case to federal district courts and expressly recognizes the U.S. District Court for the District of Columbia as an available option. 5 U.S.C. § 8477(e)(7)(A), (B).[5]

In Section 8477(e), Congress has likewise specified the types of actions that fall within this grant of subject-matter jurisdiction:

> A civil action may be brought in the district courts of the United States . . . by any participant or beneficiary . . . to recover benefits of such participant or beneficiary under the provisions of subchapter III of this chapter, to enforce any right of such participant or beneficiary under such provisions, or to clarify any such right to future benefits under such provisions[.]

---

[5] Section 8477(e) requires a plaintiff to serve a copy of the complaint on the Executive Director of FRTIB, the Secretary of Labor, and the Secretary of the Treasury. 5 U.S.C. § 8477(e)(8)(A). The record suggests that Mrs. Firestone has not served a copy of the Complaint or Amended Complaint on the latter two officials. However, Defendants have not raised this issue, and the Court sees no reason to pass upon it *sua sponte*.

*Id.* § 8477(e)(3)(C)(i). Only if Mrs. Firestone can establish that she is a participant or beneficiary would the Court consider whether it has jurisdiction under Section 8477(e) over the four specific claims she raises.

It is undisputed that Mrs. Firestone is not the relevant participant for purposes of her claim to the proceeds Mr. Hsieh's TSP account. *See id.* § 8471(3) (defining "participant" as "an individual for whom an account has been established under section 8439 of this title"). Mrs. Firestone instead maintains that she is a beneficiary, or rather, *the* beneficiary. The Court shall evaluate Mrs. Firestone's ability to make that showing under Rule 12(b)(1) because it is crucial to her attempt to establish federal-question jurisdiction based on Section 8477.

### 1. Beneficiary Designation Requirements

A "beneficiary" is statutorily defined as "an individual (other than a participant) entitled to payment from the Thrift Savings Fund under subchapter III of this chapter." *Id.* § 8471(1). Subchapter III provides, *inter alia*, that for an employee or former employee who "dies without having made an election under this section[,] . . . an amount equal to the value of that individual's account (as of death) shall . . . be paid in a manner consistent with section 8424(d) of this title." *Id.* § 8433(e)(1). Whether Mr. Hsieh was an employee or former employee at the time of his death, there is no dispute that Mr. Hsieh was a participant with a TSP account. And there is no indication that Mr. Hsieh made the aforementioned election by choosing to draw from his TSP account while he lived. *See, e.g., id.* § 8433(b). As a result, the parties are concerned with the distribution from Mr. Hsieh's account after his death, pursuant to the pertinent part of the statutory order of precedence in Section 8424(d):

> Lump-sum benefits authorized by subsections (e) through (g) shall be paid to the individual or individuals surviving the employee . . . and alive at the date title to the payment arises in the following order of precedence, and the payment bars recovery by any other individual:

> First, to the beneficiary or beneficiaries designated by the employee . . . in a signed and witnessed writing received in the Office before the death of such employee . . . . For this purpose, a designation . . . of beneficiary in a will or other document not so executed and filed has no force or effect.

> Second, if there is no designated beneficiary, to the widow or widower of the employee . . . .

*Id.* § 8424(d); *see also* 5 C.F.R. § 1651.2(a)(1), (2). There is no dispute that FRTIB and TSP are to make a distribution to *someone* under this provision; accordingly, the Court need not evaluate portions of Section 8424 and cross-referenced provisions that define qualifying "lump-sum benefits." Moreover, the Court understands that regulations identify the TSP record keeper, rather than the Office of Personnel Management ("OPM"), as the proper recipient for these purposes. *See* 5 U.S.C. § 8401(24) (defining "Office" as OPM); 5 C.F.R. § 1651.3(a) ("To designate a beneficiary of a TSP account, a participant must complete and file a TSP designation of beneficiary form with the TSP record keeper."); FRTIB Mem. at 7 n.2 (citing 5 C.F.R. § 1651.3(c)(1)). The import of Section 8424(d) is that Mrs. Firestone qualifies as a beneficiary only if Mr. Hsieh so designated her in "a signed and witnessed writing received [by the TSP record keeper] before [Mr. Hsieh's] death." Absent such a designation, the payment would go to the next individual in the order of precedence, namely Mr. Hsieh's widow, Mrs. Wang. 5 U.S.C. § 8424(d); 5 C.F.R. § 1651.2(a)(2); *see also* 5 C.F.R. § 1651.5(a) (recognizing participant's spouse as "married even if the parties are separated, unless a court decree of divorce or annulment has been entered").[6]

FRTIB's regulations further specified what kind of writing Mr. Hsieh was required to submit if he wanted to designate a beneficiary. The parties agree that the version of the regulations

---

[6] The Court need not address the details of Mr. Hsieh's and Mrs. Wang's relationship. The parties agree that the two were married, even though they undisputedly lived apart at the time Mr. Hsieh passed away. *See, e.g.*, [Wang's] Undisputed Stmt. of Material Facts, ECF No. 29-1, ¶¶ 2, 3; Pl.'s Opp'n to Wang's Mot., Ex. 1, ECF No. 33-1 (Aff. of Cai-Yen Firestone ¶ 5).

in existence when Mr. Hsieh filled out his TSP designation of beneficiary form governs this case.

That version provided, *inter alia*, that

> (c) Validity requirements. To be valid and accepted by the TSP record keeper, a TSP designation of beneficiary form must: . . .
>
>> (3) Be signed and properly dated by the participant and signed and properly dated by two witnesses; . . .
>>
>>> (ii) All submitted and attached pages must be signed by the participant, dated by the participant, and witnessed in the same manner (by the same witnesses) as the form itself and must follow the format of the TSP designation of beneficiary form[.]

5 C.F.R. § 1651.3(c)(3)(ii) (2015).[7] The regulation plainly required, in pertinent part, that a valid beneficiary designation form be "properly dated by two witnesses."

As discussed above, there is no dispute that one of Mr. Hsieh's witnesses, Ms. Bontje, did not add the date to the "Date Signed" blocks next to her signature on page one of his Form TSP-3. Hsieh TSP-3 at 1; *see also, e.g.*, FRTIB's Mem. at 2; Pl.'s Opp'n to FRTIB's Mot., Ex. 4 (Aff. of Carolan Bontje ¶ 11). Under the plain text of the then-extant regulation, the form is not "properly dated" by Ms. Bontje. 5 C.F.R. § 1651.3(c)(3) (2015). The simple fact is that page one called for a date, and she omitted that date. That reading is unchanged by the undisputed fact that Ms. Bontje *did* add a date to the Form TSP-3 when she signed a *different* section on *page two*. Hsieh TSP-3 at 2. Nor is it changed by Ms. Bontje's affidavit, submitted during briefing, in which she suggests that she intended to "adopt[ ]" the date of the witness who signed and dated above her own signature. Pl.'s Opp'n to FRTIB's Mot., Ex. 4 (Aff. of Carolan Bontje ¶ 11). For the reasons that follow, compliance with the TSP statute and regulations must be strict, not merely

---

[7] The Court understands that this version of 5 C.F.R. § 1651.3(c)(3) became effective July 31, 2014, and was effective until May 14, 2017. None of the other statutory or regulatory provisions cited in this Memorandum Opinion differed at the time Mr. Hsieh prepared his Form TSP-3.

substantial, and intent is insufficient to fill the gap.  The Court's application of the plain text of the operative regulation is reinforced by a number of factors.

First, the then-extant version of Section 1651.3(c)(3)(ii) dictated that "[a]ll submitted and attached pages must be . . . witnessed in the same manner (by the same witnesses) as the form itself."  The contrast between "submitted" pages and "the form itself" created some ambiguity about whether there is a difference between the two.  Presumably, "all" pages submitted to the TSP record keeper would include the form itself.  However, the Court shall conservatively assume, *arguendo*, that submitted pages were in fact something that did or could differ from the form itself.  Even so, this provision about submitted pages supports the Court's interpretation of Section 1651.3(c)(3) language that indisputably applied to the form itself.  Because Section 1651.3(c)(3) required proper dating by both witnesses on the form itself, this requirement that each submitted page be witnessed in the same manner reaffirms the inference that *each page of the form itself* likewise needed to be dated by both witnesses.  Otherwise an illogical result would occur:  Every page of a participant's change of beneficiary submission would need to be dated except for a page in the form itself.  Moreover, at the time, submitted pages had to "follow the format of the TSP designation of beneficiary form."  5 C.F.R. § 1651.3(c)(3) (2015).  That is further reason to expect compliance with page one itself, else the illogical outcome that "Date Signed" portions of every page in the submission—except page one of the form—needed to be complete.

Second, the instructions in Section III of Form TSP-3 itself required Ms. Bontje to add the date on page one.  That section instructed Mr. Hsieh that "[y]ou and your witnesses must complete this section."  Hsieh TSP-3 at 1.  Omitting a portion of Section III would mean that Section III is not complete.  Section III provided further that "[t]his entire form is valid only if this page is witnessed by two persons."  *Id.*  Accordingly, a failure to observe the witness requirement as to

this page one rendered ineffective any attempt to remedy that deficiency elsewhere in the form. Next to the Witness 2 signature line are standard blocks above the language, "Date Signed (*mm/dd/yyyy*)." Failure to add the date to those blocks plainly means that Section III is not complete, and that defect is fatal to the remainder of Form TSP-3, notwithstanding Ms. Bontje's addition of a date in a different section on the next page.

Third, instructions elsewhere on page one—immediately below Section III—made clear beyond cavil that the date of Ms. Bontje's signature was required in Section III. In an unnumbered section labeled in bold capital letters, "**REMEMBER TO:**", Mr. Hsieh was urged to "[p]rovide your signature and your witnesses' signatures above, along with the dates signed." Hsieh TSP-3 at 1. Echoing Section 1651.3(c)(3)(ii) of the regulations, this section of Form TSP-3 reminded Mr. Hsieh to "[h]ave the same two witnesses sign and date all pages that you submit to the TSP." *Id.* Moreover, Mr. Hsieh was to "[c]omplete each section in accordance with the instructions." *Id.* It is hard to conceive of more direct, yet concise instructions requiring the very date that Ms. Bontje omitted.[8]

Fourth, Mrs. Firestone herself puts into the record a page from FRTIB's website with instructions for participants who want to designate a beneficiary. Pl.'s Opp'n to FRTIB's Mot., Ex. 6, ECF No. 33-6 (containing webpage as of Sept. 29, 2017); *see also* Pl.'s Opp'n to FRTIB's Mot., Ex. 2 (Aff. of Walter E. Gillcrist, Jr. ¶ 8) (indicating that Mrs. Firestone's counsel is unaware "whether this website existed as such in 2015"). That webpage instructs: "Sign and witness each page of Form TSP-3 according to the directions." Pl.'s Opp'n to FRTIB's Mot., Ex. 6, ECF No.

---

[8] Mrs. Wang also points to certain further instructions, dated October 2013, that are separate from Form TSP-3 itself. *See* Wang's Mem. at 9 (citing Wang's Mem., Ex. 4, ECF No. 29-5). But Mrs. Firestone identifies the lack of evidence that Mr. Hsieh had those instructions available to him. Pl.'s Opp'n to Wang's Mot. at 19. Accordingly, the Court need not reach those instructions, which nevertheless do not detract from its foregoing conclusions.

33-6. As discussed above, those instructions dictate that "witness[ing]" each page requires dating each page. Still, the Court does not rely too heavily on this webpage because of the uncertainty of its existence at the time Mr. Hsieh and his witnesses prepared his Form TSP-3.

Fifth, the Court's interpretation of the operative version of Section 1651.3(c) is buttressed by FRTIB's own interpretation when it proposed to amend that provision. This is not the traditional instance in which the Court would use pre-enactment history to interpret a given enactment; rather, the Court considers the agency's subsequent statements about this regulation only insofar as they may further illuminate the Court's foregoing analysis of a regulatory scheme that is rather clear, albeit with somewhat peripheral ambiguity.

The parties dispute whether it is proper to consider this post-enactment interpretation, which Mrs. Wang brought to the Court's attention. *See* Wang's Mem. at 8-9. Mrs. Firestone objects with case law about the limited circumstances in which a court may consult the pre-enactment legislative history of a statute, namely, only when the text is not clear. Pl.'s Opp'n to Wang's Mot. at 23-24 (citing *Ratzlaf v. United States*, 510 U.S. 135 (1994); *Consumer Elecs. Ass'n v. FCC*, 347 F.3d 291 (D.C. Cir. 2003)). But her precedent is not on point. Here the Court is dealing with a regulation, and the parties have not cited any legislative history preceding that regulation itself; rather, the dispute concerns subsequent history of that regulation. Moreover, the text of the regulation at issue is rather clear, but in light of a little ambiguity about whether requirements for the form itself are the same as those for submitted pages—assuming some distinction between the two—the Court will consider FRTIB's subsequent interpretation of Section 1651.3(c).[9]

---

[9] The parties have not briefed the application of any regime of formal deference to an agency's interpretation of its regulations. *See, e.g.*, *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997) (noting, upon analysis of agency interpretation of its rule, that under the circumstances "[t]here is simply

In a proposed rule published in the Federal Register on March 30, 2017, FRTIB observed that "Section 1651.3(c) currently requires a TSP beneficiary designation form to be witnessed by two people and also requires each page of the form to be dated by the participant and both witnesses."  Designation of Beneficiary, 82 Fed. Reg. 15,642, 15,642 (Mar. 30, 2017) (to be codified at 5 C.F.R. pt. 1651.3(c)).  This statement in the Federal Register affirms the Court's reconciliation, above, of the slight ambiguity between expectations for the form itself and expectations for submitted pages, on the assumption, *arguendo*, that those submitted pages could be something different from the form itself.  The agency gives this affirmation by linking "each page" language to the "of the form" interpretation. Although the proposed rule—eventually enacted—expressly intended to change only the number of required witnesses from two to one, that proposal also instituted the following clearer language about the signature requirement for the witness who remained: "All submitted and attached pages of the form must be signed and dated by the same witness[.]"  *Id.*; Designation of Beneficiary, 82 Fed. Reg. 21,107 (May 5, 2017) (to be codified at 5 C.F.R. pt. 1651.3(c).[10]  This language did not change the previous requirement that Ms. Bontje date the first page of Mr. Hsieh's Form TSP-3.  FRTIB concurred in its closing remark that, aside from reducing the number of witnesses, "[t]he other validity requirements, including the requirement that the same witness sign and date all pages of the beneficiary designation form, remain unchanged."  Designation of Beneficiary, 82 Fed. Reg. at 15,642.

The statutory order of precedence, FRTIB's implementing regulations, the instructions on Form TSP-3, FRTIB's webpage during this litigation, and—to the extent proper to consider it—

---

no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question").  For the reinforcing purpose for which the Court considers the agency's interpretation, the Court need not go down that road either.

[10] Although Section 1651.3(c) has been amended still further since then, the portions relevant to this Memorandum Opinion have not changed.

the agency's subsequent interpretation of its then-extant regulations, all reinforce the Court's conclusion that the TSP regime requires strict compliance with the change of beneficiary rules that were operative when Mr. Hsieh submitted his Form TSP-3. Moreover, this interpretation is consistent with the agency's own alleged response to Mr. Hsieh's Form TSP-3. The record contains a notice from TSP to Mr. Hsieh dated November 28, 2015, stating that the agency was "unable to process" his Form TSP-3 because "[a] required signature date is missing or invalid." FRTIB's Reply, Ex. 2, ECF No. 34. Although Mrs. Firestone argues that there is no evidence that this rejection notice was sent to, or received by, Mr. Hsieh, the Court need not resolve that issue. *See* Pl.'s Opp'n to FRTIB's Mot. at 7; Pl.'s Opp'n to Wang's Mot. at 3-4. A "presumption of regularity" attaches to ordinary-course government records like this one unless the Court observes "clear evidence to the contrary." *Miley v. Lew*, 42 F. Supp. 3d 165, 171-72 (D.D.C. 2014) (Kollar-Kotelly, J.)) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)) (internal quotation marks omitted); FRTIB's Reply at 4. The Court lacks briefing about FRTIB's and TSP's record-keeping practices, but the Court has no reason to believe that these agencies fraudulently manufactured the notice for this litigation. Accordingly, the language in the notice— whether or not it was sent—reflects the government's strict compliance with the requirement that Mr. Hsieh's Form TSP-3 required a date next to Ms. Bontje's signature.

Mrs. Firestone has not identified any case—either in this jurisdiction or any other—that permits less than strict compliance with the TSP statute and then-extant regulations. Although the Court is unaware of any case interpreting the witness date requirement under Section 1651.3(c), the few courts outside this jurisdiction that have construed other parts of Section 1651.3 have done so strictly. In *Kriebel v. Long*, a district court construed Section 1651.3 to require more than simply proof of mailing Form TSP-3; rather, FRTIB must have actually received the form, which could

nevertheless be established with the aid of the mailbox rule. 994 F. Supp. 2d at 677-78. Similarly, in *Hewitt v. Thrift Saving Plan*, a federal district court granted summary judgment to FRTIB where the plaintiff did not allege that the decedent had submitted his Form TSP-3 before he died, despite some suggestion of decedent's intent to do so. 664 F. Supp. 2d 529, 530-31, 534-35 (D.S.C. 2009).

A couple of other cases briefly consider Section 1651.3(c) but do not imply much about the strictness of compliance. In *Faris v. Long*, a district court recognized a beneficiary designation as valid under the TSP statute and regulation because it was "signed, witnessed, and received by [FRTIB] prior to the participant's death." No. 2:07-CV-102, 2008 WL 612938, at *5 (E.D. Tenn. Mar. 4, 2008) (citing 5 U.S.C. § 8424(d); 5 C.F.R. § 1651.3(c)) (holding that FRTIB's "series of bureaucratic missteps" did not preclude *ex post* recognition of valid TSP-3). The *Faris* court did not have reason to discuss the more specific requirements of what witnessing entailed. *See also Sharber v. Sharber*, No. 2011-CA-000086-MR, 2013 WL 3013583, at *3-*4 (Ky. Ct. App. June 14, 2013) (deferring to TSP's finding of a valid TSP-3 under Section 1651.3, but likewise not addressing witness requirements). When the decedent in *Faris* submitted his operative Form TSP-3, the then-extant version of Section 1651.3(c) differed; there was no express requirement that either the participant or the witnesses date the form. *See Faris*, No. 2:07-CV-102, 2008 WL 612938, at *2, *5 (identifying operative Form TSP-3 as submitted in 2006); 5 C.F.R. § 1651.3(c) (2006).

In short, absent any case law to the contrary, this Court agrees that Section 1651.3 is part of "a regime where anything short of strict compliance with the statutory and regulatory requirement of submitting Form TSP-3 to the TSP record keeper is insufficient to designate or

change a beneficiary." *Hewitt*, 664 F. Supp. 2d at 534. That strict compliance extends to the requirement of submitting a *valid* Form TSP-3, which Mr. Hsieh did not do.

Mrs. Firestone nevertheless urges the Court to rely on other out-of-circuit authority recognizing substantial compliance in the context of the Employee Retirement Income Security Act ("ERISA"). Pl.'s Opp'n to Def. Wang's Mem. at 25-27 (citing, e.g., *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554 (4th Cir. 1994)). But assuming, *arguendo*, that ERISA precedent is closely analogous enough to rely upon, her cited case law clearly limits this doctrine to circumstances in which ERISA does *not* expressly furnish a rule. *See, e.g.*, *Davis v. Combes*, 294 F.3d 931, 940 (7th Cir. 2002) ("The concept of substantial compliance is part of the body of federal common law that the courts have developed for issues on which ERISA does not speak directly."). Unlike in the TSP context, the ERISA context evidently lacks an "explicit requirement . . . that a change of beneficiary form must be signed and dated in a specific manner." *Id.* (citing *Phoenix Mut. Life Ins. Co.*, 30 F.3d at 562). In what appears to be one of the seminal cases on this issue, the Fourth Circuit was careful to cabin its holding: "We do not hold that the federal common law of substantial compliance is applicable in any context other than that before the court in the instant case, the change of beneficiary provision in an ERISA plan." *Phoenix Mut. Life Ins. Co.*, 30 F.3d at 565. Moreover, some courts doubt whether this application of the substantial compliance doctrine in the ERISA context remains valid even in circuits that initially adopted it. *See, e.g.*, *Ng v. Prudential Ins. Co. of Am.*, 172 F. Supp. 3d 355, 363-64 (D. Mass. 2016) (discussing *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009)). In short, neither Congress by statute, nor FRTIB by regulation, nor case law gives any reason to import a "substantial compliance" doctrine from ERISA into this context.[11]

---

[11] FRTIB and TSP, on the one hand, and Mrs. Firestone, on the other, draw conflicting inferences

The Court has identified a different context where an affidavit has been found sufficient to remedy a defect in compliance. In *Jenkins v. Bartlett*, two experts failed to sign expert disclosures prepared by defendants' attorney, and so they did not strictly comply with Federal Rule of Civil Procedure 26 requiring that such a report be "prepared and signed by the witness." 487 F.3d 482, 487-88 (7th Cir. 2007) (citing Fed. R. Civ. P. 26(a)(2)(B)) (internal quotation marks omitted). However, the district court found the error harmless under Rule 37(c)(1) because the experts substantially complied by expressly adopting the contents of those disclosures in affidavits submitted after the fact. *Id.* at 488. The Seventh Circuit found no abuse of discretion in recognizing substantial compliance through affidavits "cur[ing] the main defect in the expert report, the absence of the [experts'] signatures." *Id.* But even that precedent is distinguishable. There is no TSP equivalent of the Rule 37(c)(1) safe harbor for harmless error.

In short, Mrs. Firestone fails to persuade the Court that this is a context where substantial compliance is permissible. Mrs. Firestone has not shown that Congress gave FRTIB and TSP the discretion to deviate from its statutory and regulatory obligations, which in this case require payment to the surviving spouse absent a valid Form TSP-3 designating a beneficiary. *See* 5 U.S.C. § 8424(d); 5 C.F.R. § 1651.2(a)(1), (2); *cf. Ferguson v. Long*, 885 F. Supp. 2d 294, 299 (D.D.C. 2012) (citing *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 429-30 (1990)) (finding that, where FRTIB had valid Form TSP-3 on file, FRTIB had no discretion to make distribution to surviving spouse even "where [FRTIB] is satisfied that the equities demand it").

---

from the Federal Employees Group Life Insurance Act ("FEGLIA"). *See* FRTIB's Mem. at 9-10; Pl.'s Opp'n to FRTIB's Mot. at 14-15. But because FRTIB and TSP are the parties aiming to draw support from the FEGLIA context, and the Court finds grounds for strict compliance without reaching that proposed analogue, the Court need not discuss FEGLIA further here.

2.  <u>Application to Mrs. Firestone's Claims</u>

Because Mrs. Firestone has not established that she was a designated beneficiary of Mr. Hsieh's TSP account, she cannot avail herself of this Court's jurisdiction under Section 8477(e). That flaw is fatal to her declaratory judgment and specific performance claims, which collectively attempt "to recover benefits of [a] . . . beneficiary under the provisions of subchapter III of this chapter [and] to enforce any right of [a] . . . beneficiary under such provisions." 5 U.S.C. § 8477(e)(3)(C)(i).[12] Accordingly, the Court shall dismiss the declaratory judgment claim against FRTIB, TSP, and Mrs. Wang, as well as the specific performance claim against FRTIB and TSP.

Mrs. Firestone also pleads a right to recover as third-party beneficiary for FRTIB's and TSP's breach of a contract with Mr. Hsieh. Am. Compl. ¶¶ 21-25. She tries to ground this claim in the "recover benefits" and "enforce any right" language of Section 8477(e). *See* Pl.'s Opp'n to FRTIB's Mot. at 15. But Mrs. Firestone does not furnish any authority for her argument, in effect, that Congress intended to provide TSP participants with contractual rights enforceable by them or their third-party beneficiaries through a breach of contract claim. Moreover, she does not identify precedent articulating the elements of such a claim, which would presumably derive from state common law, despite the incongruity with the federal statute from which the putative claim springs. Nor does Mrs. Firestone discuss whether and how the statutory definition of a beneficiary should accommodate this non-statutory notion of a third-party beneficiary.

---

[12] Mrs. Firestone does not invoke the Court's jurisdiction over a beneficiary's (or participant's) attempt "to clarify any such right to future benefits under" subchapter III governing the TSP. 5 U.S.C. §8477(e)(3)(C)(i). Nor has the Court found any precedent that would support an extension of this provision to those who are seeking to establish themselves as beneficiaries. The one relevant case identified by the Court briefly construes this provision as furnishing rights to existing beneficiaries. *See Garcia v. United States*, 996 F. Supp. 39, 42 (D.D.C. 1998) (interpreting Section 8477(e)(3)(C)(i) as "creat[ing] a cause of action for *beneficiaries* to sue to recover lost benefits, or to enforce or *clarify rights*" (emphasis added)).

The Court need not puzzle further, however, about the nature of a breach of contract claim in this setting, because Mrs. Firestone has not established that the Court would have jurisdiction over any such claim. Section 8477(e) accords jurisdiction only over claims by participants and beneficiaries, of which Mrs. Firestone is neither. In an apparent attempt to salvage her claim, she argues that she is the "*intended* third-party beneficiary of the contract between FRTIB and Mr. Hsieh." *Id.* at 16 (emphasis added). But the Court does not accept this Trojan Horse for persuading the Court to rely on Mr. Hsieh's (presumed) intention. As discussed above, the TSP regime requires strict compliance. Mr. Hsieh did not comply with the requirements for a valid Form TSP-3; accordingly, he did not designate Mrs. Firestone as a beneficiary, and the Court would have no jurisdiction over any otherwise-valid breach of contract claim rooted in Section 8477(e).

That leaves Mrs. Firestone's equitable estoppel claim. It is, of course, her burden to establish the Court's jurisdiction over that claim. *Am. Farm Bureau*, 121 F. Supp. 2d at 90. But Mrs. Firestone does not specifically discuss the grounds for jurisdiction over an equitable estoppel claim. Indeed, she says very little about this claim at all in her briefing. In opposing Mrs. Wang's motion, Mrs. Firestone briefly asserts that Mrs. Wang's challenge to the equitable estoppel claim "is not only premature[,] it is unsubstantiated," in light of allegations in the Amended Complaint. Pl.'s Opp'n to Wang's Mot. at 13-14. Yet, elsewhere in that pleading, Mrs. Firestone effectively ceases pursuing that claim against Mrs. Wang altogether: "Plaintiff is not aware presently of any conduct by Mrs. Wang that would draw in the doctrine [of equitable estoppel]. However, Plaintiff will address the merits of this claim if necessary in her response to the government's recently filed motion." *Id.* at 27. FRTIB and TSP indeed challenge her equitable estoppel claim, but she says *nothing* in response. *See* FRTIB's Mot. at 11-13; *see also generally* Pl.'s Opp'n to FRTIB's Mot.[13]

---

[13] Mrs. Firestone does refer to equitable estoppel once in her brief, but she does so only in

Ordinarily the Court hesitates to treat an issue as conceded. *See, e.g.*, *Manning v. Esper*, Civil Action No. 12-1802 (CKK), 2019 WL 281278, at *6 (D.D.C. Jan. 22, 2019) (Kollar-Kotelly, J.) (discussing Circuit precedent). Here, however, there is good reason to do so. Mrs. Firestone is expressly aware that Mrs. Wang's motion challenges her equitable estoppel claim, and she clearly anticipated the same in FRTIB's and TSP's motion. Despite that awareness, the Court lacks Mrs. Firestone's counterarguments, if any, as to the legal merits of her equitable estoppel claim. While in response to Mrs. Wang's motion, Mrs. Firestone initially urges the sufficiency of the equitable estoppel allegations in her Amended Complaint, elsewhere she concedes that "this case may not fall neatly into equitable estoppel jurisprudence." Pl.'s Opp'n to Wang's Mot. at 27 (citing *Ferguson*, 885 F. Supp. 2d at 298). She offers no further argument why the Court should recognize an equitable estoppel claim here if it is admittedly a somehow-unusual setting for such a claim.

Even if the Court does not treat the equitable estoppel argument as conceded, the Court still cannot identify the jurisdictional hook. Absent beneficiary status for Mrs. Firestone, there is no obvious basis for jurisdiction over her claim under Section 8477(e). And she has not argued that this Court has any other jurisdiction over her suit. Accordingly, Mrs. Firestone's equitable estoppel claims against Mrs. Wang, FRTIB, and TSP must be dismissed, if not by concession, then under Rule 12(b)(1).

Because Mrs. Firestone has not established that this Court has jurisdiction over any of her claims, the Court need not address any distinct issues of Mrs. Firestone's standing or FRTIB's and TSP's sovereign immunity, nor does it need to evaluate her claims under Rule 12(b)(6).

---

describing a case that she distinguishes for other purposes. *See* Pl.'s Opp'n to FRTIB's Mot. at 6 (citing *Ferguson*, 885 F. Supp. 2d at 298).

### B. Alternatively, Summary Judgment Under Rule 56

Assuming, *arguendo*, in the alternative that Mrs. Firestone could establish this Court's subject-matter jurisdiction, the Court nevertheless finds that the undisputed material facts warrant summary judgment for Mrs. Wang, FRTIB, and TSP. In their briefing, the parties comment on each other's (non-)compliance with the rules for statements of material fact accompanying summary judgment pleadings. The parties' briefing is, indeed, not a model of compliance in this regard. However, the record shows that the vanishingly few facts that are necessary to resolve the motion for summary judgment in the alternative are not genuinely disputed.

As discussed above, it is undisputed that Ms. Bontje did not add a date next to her witness signature on the first page of Mr. Hsieh's Form TSP-3. The beneficiary designation was therefore ineffective. Without beneficiary status, Mrs. Firestone is not entitled to a declaratory judgment or specific performance. The foregoing discussion also shows that Mrs. Firestone did not sufficiently plead the elements of a valid breach of contract claim, and that she has conceded the legal merits of her equitable estoppel claim. Accordingly, Mrs. Firestone is unable to prevail, even on the merits.

***

None of Mrs. Firestone's other arguments change the outcome. For example, discovery is unnecessary because the undisputed material facts show that she is not the beneficiary. *Contra* Pl.'s Opp'n to FRTIB's Mot. at 8 (requesting discovery for purposes exceeding scope necessary to decide pending motions). Nor are the parties' disputes as to any other facts material to this outcome.

If, as the parties seem to agree, Mr. Hsieh really did intend to designate a beneficiary, it is unfortunate that he was unable to effectively do so. The Court understands why strict compliance

is necessary to ensure justice in the aggregate. As FRTIB and TSP argue, the "agencies" abide by "strict and clear rules" in order to effectively "administer many thousands of savings plans for current and former federal employees and . . . distribute the funds in those plans to the correct beneficiaries." FRTIB's Reply at 1. The Court's faithfulness to the mandates of Congress and FRTIB regulations precludes recourse to any equities suggesting less than strict compliance.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Mrs. Wang's [29] Motion to Dismiss or, in the Alternative, for Summary Judgment, and **GRANTS** FRTIB's and TSP's [30] Motion to Dismiss, or, in the Alternative, for Summary Judgment.

An appropriate Order accompanies this Memorandum Opinion.

Dated: March 25, 2019

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge
